FILED
United States Court of Appeals
Tenth Circuit

June 2, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SAVE OUR SNOWPLANES,

      Plaintiff–Appellant,

  v.

KEN SALAZAR, in his official
capacity as Secretary, United States
Department of Interior; UNITED
STATES DEPARTMENT OF THE
INTERIOR; DANIEL N. WENK, in
his official capacity as Director,
National Park Service; MICHAEL D.
SNYDER, in his official capacity as
National Park Service Regional
Director, Intermountain Region; and
MARY GIBSON SCOTT, in her
official capacity as Superintendent,
John D. Rockefeller Jr. Memorial
Parkway and Grand Teton
National Park Superintendent,[*]

      Defendants–Appellees.

No. 07-8055
(D.C. No. 05-CV-100-WFD)
(D. Wyo.)

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Ken Salazar is substituted for Dirk
Kempthorne, Daniel N. Wenk is substituted for Fran P. Mainella, and Michael D.
Snyder is substituted for Steven P. Martin.

**ORDER AND JUDGMENT**[**]

Before **HENRY**, Chief Circuit Judge, **BRISCOE**, and **LUCERO**, Circuit Judges.

Save Our Snowplanes, a group of snowplane enthusiasts, challenged a National Park Service ("NPS") winter use rule eliminating snowplanes in Grand Teton National Park. It alleged violations of both the Administrative Procedure Act ("APA") and National Environmental Policy Act ("NEPA"). But we cannot redress Save Our Snowplanes' alleged injury because the complaint challenged a winter use rule not in effect when the case commenced. Accordingly, we conclude that Save Our Snowplanes lacks standing. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the judgment of the district court and remand the case with directions to dismiss for lack of jurisdiction.

**I**

Save Our Snowplanes is an unincorporated group of snowplane enthusiasts who use snowplanes for travel to and ice fishing on Jackson Lake Reservoir in Grand Teton National Park. Snowplanes, despite their deceptive name, do not fly; they travel on mounted skis and are driven by a pusher-propeller. According to Save Our Snowplanes, snowplanes were the primary means of winter

---

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

transportation in the Jackson Hole Valley and Yellowstone National Park before snowmobiles were invented.

In 2001, NPS promulgated a rule regarding winter use activities in Grand Teton National Park prohibiting snowplane use on Jackson Lake beginning at the end of the 2001–2002 winter use season. Special Regulations, Areas of the National Park System, 66 Fed. Reg. 7260, 7267-68 (Jan. 22, 2001) [hereinafter 2001 Rule].[1] The 2001 Rule also restricted snowmobile use. Id. Shortly before the 2001 Rule went into effect, International Snowmobile Manufacturers Association filed a lawsuit in the United States District Court for the District of Wyoming challenging the process leading to the adoption of the snowmobile restrictions. In 2001, the parties in that case reached a settlement in which NPS agreed to prepare a Supplemental Environmental Impact Statement ("Supplemental EIS") to "consider new information and data submitted regarding new snowmobile technologies." In 2002, as NPS worked to prepare the Supplemental EIS, it delayed implementation of the snowmobile restrictions but

---

[1] The 2001 Rule, in relevant part, provides:

A winter use season is that portion of the winter months that begins each year in approximately late November, through the following year ending in approximately the middle of March. Specific dates are dependent on weather conditions and the availability of park facilities and resources and may be adjusted at the discretion of the Superintendent. Appropriate notice will be given to the public of determined start and ending dates each season.

66 Fed. Reg. at 7267-68.

did not delay the snowplane ban. Special Regulations; Areas of the National Park System, 67 Fed. Reg. 69,473, 69,476-77 (Nov. 18, 2002) [hereinafter Delay Rule].

Approximately a year after the Delay Rule was promulgated, it was replaced by the 2003 Rule. Special Regulations; Areas of the National Park System, 68 Fed. Reg. 69,268, 69,268 (Dec. 11, 2003) [hereinafter 2003 Rule]. The 2003 Rule continued to ban snowplane use in Grand Teton National Park but allowed snowmobiling with restrictions. Id. at 69,289. Complying with the 2001 settlement agreement, NPS published a Supplemental EIS with the 2003 Rule that "incorporated any significant new or additional information or data submitted with respect to a winter use plan." Id. (quotation omitted). "The [Supplemental EIS] did not include re-evaluating the decision to ban snowplane use on Jackson Lake because this had not been an issue in the [District of Wyoming] lawsuit, and was not an aspect of the resulting settlement." Id. at 69,268.

Also in 2003, a separate lawsuit was filed in the United States District Court for the District of Columbia challenging the 2003 Rule for continuing to permit snowmobiling in several national parks, including Grand Teton, albeit subject to certain conditions. Fund for Animals v. Norton, 294 F. Supp. 2d 92, 96-97 (D.D.C. 2003). In Fund for Animals, the District of Columbia court vacated the 2003 Rule, ordering the 2001 Rule as modified by the Delay Rule to

- 4 -

remain in effect.  Id. at 115; see 67 Fed. Reg. at 69,473 (Delay Rule); 66 Fed.

Reg. at 7268 (2001 Rule).

Because the District of Columbia court ordered the 2001 Rule to remain in

effect, the Wyoming court reopened the previously-settled challenge to the

snowmobile restrictions in the 2001 Rule.  Order Reopening Case, Int'l

Snowmobile Mfrs. Ass'n v. Norton, No. 00-CV-229-B, at 2 (D. Wyo. Dec. 31,

2003).  In February 2004, the Wyoming court preliminarily enjoined NPS from

enforcing the 2001 Rule and required NPS to promulgate temporary rules for the

2003-2004 winter use season.  Int'l Snowmobile Mfrs. Ass'n v. Norton, 304 F.

Supp. 2d 1278, 1294 (D. Wyo. 2004) ("International Snowmobile I").  In

response, NPS promulgated a Compendium Amendment allowing snowmobiling

under certain conditions.  Consistent with past practice and in the absence of any

challenge, the Compendium Amendment maintained the snowplane use ban in

Grand Teton National Park.  In October 2004, the Wyoming court decided the

merits of the challenge to snowmobile restrictions in the 2001 Rule, concluding

that "NPS violated both NEPA and the APA in its rush to push through the

politically predetermined ban on snowmobiles in the Parks."  Int'l Snowmobile

Mfrs. Ass'n v. Norton, 340 F. Supp. 2d 1249, 1266 (D. Wyo. 2004)

("International Snowmobile II").  Accordingly, it vacated the 2001 Rule.  Id.  The

court in International Snowmobile II did not address the validity of the snowplane

ban, which, despite the panoply of challenges to the prior winter use rules, remained uncontested.

Following vacatur of the 2001 Rule in International Snowmobile II, NPS promulgated a new final rule governing winter use activities. Special Regulations; Areas of the National Park System, 69 Fed. Reg. 65,348 (Nov. 10, 2004) [hereinafter 2004 Rule]. Consistent with the prior rules, the 2004 Rule included a ban on snowplane use in Grand Teton National Park. Id. at 65,366. By its terms, the 2004 Rule was set to expire after three winter use seasons. Id. at 65,348. Remarkably, the 2004 Rule remained in effect as intended through the end of the 2006-2007 winter use season.[2]

In the midst of all of this, Save Our Snowplanes filed this lawsuit in the United States District Court for the District of Wyoming on March 29, 2005—while the 2004 Rule was in effect. It challenged the validity of a snowplane ban in Grand Teton National Park. In its complaint, Save Our

---

[2] Well after the complaint in our present case was filed, NPS promulgated the 2007 rule that preserved what had become a longstanding prohibition on snowplane use in Grand Teton National Park. Special Regulations; Areas of the National Park System, 72 Fed. Reg. 70,781, 70,803 (Dec. 13, 2007) [hereinafter 2007 Rule]. On September 15, 2008, the United States District Court for the District of Columbia vacated the 2007 Rule. Greater Yellowstone Coal. v. Kempthorne, 577 F. Supp. 2d 183, 210 (D.D.C. 2008). In order to ensure that there was a rule to govern winter use activities during the entirety of the 2007-2008 winter use season, the United States District Court for the District of Wyoming reinstated the 2004 Rule on November 7, 2008. Order Implementing Temporary Remedy and Granting Mot. to Intervene, State of Wyoming v. U.S. Dep't of the Interior, Nos. 07-CV-0319-B & 08-CV-0004-B, at 21 (D. Wyo. Nov. 7, 2008).

Snowplanes alleged that NPS had: (1) continued to unlawfully enforce the 2001 Rule vacated by International Snowmobile II; (2) acted arbitrarily and capriciously in violation of the APA by failing to supply a reasoned analysis for its decision to completely eliminate snowplane use on Jackson Lake; (3) violated NEPA by failing to provide sufficient notice to the public regarding the elimination of snowplanes from Jackson Lake; and (4) violated NEPA by failing to consider reasonable alternatives that would have allowed continued but limited use of snowplanes on Jackson Lake. Despite Save Our Snowplanes' protestations to the contrary, the district court recognized that NPS was not unlawfully enforcing the 2001 Rule, which had been superseded by three subsequent rules and a Compendium Amendment. Order Upholding Agency Action, Save Our Snowplanes v. Norton, No. 05-CV-100-D, at 19 (D. Wyo. June 27, 2007). Rather, it was the 2004 Rule that was in effect when the complaint was filed. Save Our Snowplanes' first claim therefore lacked merit. Then, despite acknowledging that Save Our Snowplanes' complaint challenged the 2001 Rule, the district court analyzed the validity of the 2004 Rule. Id. at 22. It rejected the reasonable alternatives claim because Save Our Snowplanes submitted no comments on the snowplane ban during the scoping process, and comments NPS received did not suggest allowing limited snowplane use. Id. at 35-36. The district court then rejected the remaining two claims on their merits. Id. at 30, 33. Accordingly, the

district court denied the petition for review.  Id. at 39.  Save Our Snowplanes now appeals.

## II

Before reaching the merits of Save Our Snowplanes' appeal, we must ensure that the district court had jurisdiction over this case.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Qwest Corp. v. Pub. Utils. Comm'n of Colo., 479 F.3d 1184, 1191 (10th Cir. 2007).  This includes ensuring that Save Our Snowplanes has constitutional standing to raise its claims.  Qwest Corp., 479 F.3d at 1191.  Because it invoked the jurisdiction of the federal courts, Save Our Snowplanes bore the burden of alleging in its complaint sufficient facts to demonstrate standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  Allen v. Wright, 468 U.S. 737, 752 (1984) (emphasis added).  We review questions of standing de novo.  Stewart v. Kempthorne, 554 F.3d 1245, 1254 (10th Cir. 2009).

Save Our Snowplanes, as an association, was not directly injured by the snowplane ban, so its standing is derivative of that of its members.  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 342 (1977).  An organization has representational standing only if:  "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane

- 8 -

to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 343.

Under the first prong, we consider whether any member of Save Our Snowplanes would have standing to sue in her own right. Constitutional standing requires injury-in-fact, causation, and redressability. Lujan, 504 U.S. at 560-61; Stewart, 554 F.3d at 1253-54. To judge standing in this case, we must interpret a complaint whose clarity is murky at best. As did the district court, we read the complaint as a challenge to the 2001 Rule governing winter use activities in Grand Teton National Park.[3] In addition to the portion of the complaint on which the district court relied, Save Our Snowplanes explicitly contested NPS's "decision to eliminate snowplane use on Jackson Lake after the 2001-2002 winter

---

[3] As the district court put it:

Plaintiff's arguments are premised on the erroneous assertion that NPS has unlawfully continued to enforce the 2001 Rule despite its vacatur by the Wyoming Court in [International Snowmobile II]. However, the 2001 Rule and its rule-making process have been superseded by three subsequent rule-making processes and a Compendium Amendment, all of which re-adopted the prohibition on snowplane use on Jackson Lake. . . .

This fundamental misunderstanding plagues Plaintiff's entire brief, which never really addresses the 2004 Rule and the process that led to it.

Order Upholding Agency Action at 19.

- 9 -

season." That prohibition was created by the 2001 Rule. Fairly read, the complaint challenged the 2001 Rule.

Unlike the district court, however, we will not assume that Save Our Snowplanes intended to challenge the 2004 Rule even though it never mentioned that rule in the complaint. Our conclusion that the complaint challenged the 2001 Rule is confirmed by Save Our Snowplanes' response to our show cause order, in which it replied that it "is not challenging the 2004 Final Rule per se; rather, the Plaintiff contends that the analyses set forth in the 2000 FEIS, ROD, and 2001 Final Rule were flawed and unlawful" (second emphasis added).[4] Thus, we consider whether Save Our Snowplanes had standing to challenge the 2001 Rule.

In addressing the injury in fact requirement, Save Our Snowplanes alleges that its members "recreate, specifically ice fish, on Jackson Lake Reservoir using 'snowplanes.'" It alleges further that NPS has unlawfully "eliminat[ed] snowplane use on Jackson Lake within the Grand Teton National Park." Members of Save Our Snowplanes have historically used snowplanes on Jackson Lake, but they could no longer do so under the terms of the ban. This loss of use constitutes injury in fact.

---

[4] Although we may not definitively rely on an a post-hoc appellate filing to determine what claims were raised in the complaint before the district court, we do consider that document as supporting our interpretation.

That members of Save Our Snowplanes were unable to use snowplanes on Jackson Lake was caused, at some point, by the challenged 2001 Rule. Thus, the complaint sufficiently alleged causation.

As for redressability, the complaint sought only prospective relief in the form of an injunction prohibiting enforcement of the 2001 Rule.[5] But, as the district court recognized, "the 2001 Rule and its rule-making process ha[d] been superseded by three subsequent rule-making processes and a Compendium Amendment." Order Upholding Agency Action at 19. That rule had also been vacated by judicial order. International Snowmobile II, 340 F. Supp. 2d at 1266. When Save Our Snowplanes filed its complaint in March 2005, the 2004 Rule, not the 2001 Rule, governed snowplane use in Grand Teton National Park. See 69 Fed. Reg. at 65,348 (stating that the 2004 Rule became effective on December 10, 2004). Because the 2001 Rule was not in effect when Save Our Snowplanes filed its complaint, the district court could not have enjoined the snowplane ban contained therein. Save Our Snowplanes' alleged injury is therefore not redressable by the requested relief. Accordingly, no individual member of Save Our Snowplanes has standing to contest the alleged injury, and Save Our

---

[5] Although the complaint also sought "[a]n award of attorneys fees and costs of litigation," such a prayer does not seek retrospective relief for harms already incurred.

Snowplanes as an association lacks standing.[6] Thus, the district court lacked jurisdiction.

## III

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** the case with directions to dismiss for lack of jurisdiction.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[6] Because we conclude that the allegations in Save Our Snowplanes' complaint are insufficient to provide any individual member with standing, we need not consider the remaining two prongs of the Hunt test.