EBEL, Circuit Judge,
dissenting.
The Southern Utah Wilderness Alliance (SUWA) brought this action against UtahAmerican Energy, Inc., and two bureaus of the Department of Interior — the Office of Surface Mining Reclamation and Enforcement (OSM) and the Bureau of Land Management (BLM) — in an effort to prevent UtahAmerican Energy from mining coal in Lila Canyon Mine, Utah.
SUWA’s primary claim on appeal challenges the validity of UtahAmerican Energy’s lease to mine coal. SUWA argues that UtahAmerican Energy failed to comply with statutory and regulatory requirements for the development of its mining operations. As a result of this noncompliance, SUWA contends that UtahAmerican Energy’s lease to mine coal automatically *1245 terminated in August 2005. Both the district court and the majority opinion have rejected this argument. For the reasons that follow, however, I dissent from that conclusion.
SUWA’s second argument on appeal stems from its claim in the district court that, if UtahAmerican Energy continues to hold a valid lease requirement, OSM must issue a new mining plan before UtahAmerican can begin its mining operations. The district court dismissed this claim because it concluded that SUWA lacked standing under Article III of the Constitution to raise the claim, and, in any event, there was no final agency action. Because I would conclude that UtahAmerican Energy lacks a valid lease to mine coal, I would not reach this issue. The majority opinion, however, reached this issue and concluded that SUWA had standing to challenge OSM’s failure to prepare a new recommendation regarding UEI’s mining plan. In my view, if we need to reach this issue, we should conclude that SUWA lacks constitutional standing to raise that issue.
DISCUSSION
I. Termination of UtahAmerican Energy’s Mining Lease
A. Standard of Review
In a case brought under the APA, as is the case here, we review the district court’s decision de novo. Wyoming ex rel. Crank v. United States, 539 F.3d 1236, 1244 (10th Cir.2008). In reviewing the challenged agency action, findings, or conclusions, we may set them aside if we conclude the agency was arbitrary and capricious or abused its discretion. See id.; see also 5 U.S.C. § 706(2)(A). Where an agency issues an ambiguous order, we will uphold the agency’s subsequent interpretation of that order so long as it is not arbitrary and capricious. See Colo. Interstate Gas Co. v. Fed. Energy Regulatory Comm’n, 791 F.2d 803, 810 (10th Cir.1986). An agency acts arbitrarily and capriciously where it has “entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.” Lamb v. Thompson, 265 F.3d 1038, 1046 (10th Cir. 2001).
B. Analysis
In order to resolve whether UtahAmerican Energy’s mining lease has expired or remains valid, the first issue we must address is whether BLM’s November 2002 Order suspending UtahAmerican’s obligations to comply with the development requirement is ambiguous with respect to when that suspension terminated. The majority concluded that it was, but I respectfully disagree. BLM’s November 2002 Suspension Order reads as follows:
The granting of this suspension of operations and production is effective 4 September 2001, and will continue until 15 days after the final court decision of the SUWA appeal dated 4 September 2001. The granting of this suspension of operations and production is - subject to the attached stipulations, which are made part of this approval.
(Jt.App. at 1090.) In my view, BLM’s November 2002 Suspension Order is susceptible to only a single interpretation: that the suspension period would last only so long as the judicial proceedings stemming directly from SUWA’s September 4 objection lasted, and another fifteen days thereafter.
The language of BLM’s November 2002 Suspension Order controls my interpretation of it. Not just once, but twice, the suspension order tethers itself to the SUWA’s September 4 objection. First, it retroactively applies the suspension order *1246 to when SUWA filed its objection by making the suspension “effective 4 September 2001.” (Id.) Next, it explicitly states that the suspension “will continue until 14 days after the final court decision of the SUWA appeal dated k September 2001.” (Id.) This language indicates that once the “final court decision” stemming from the September 4 objection is issued, the suspension order will automatically expire.
The majority suggests that this language is outrageous and that the parties must have meant to say that the suspension would remain in effect throughout the time that the permitting process could be challenged. That may very well have been the parties’ intent, but that doesn’t render the language ambiguous. Words matter, and here the words chosen for this suspension order are simply not ambiguous.[1]
In sum, the November 2002 Suspension Order unambiguously provided UtahAmerican Energy with a suspension that spanned from September 4, 2001, until March 8, 2002, a total of 185 days. Absent this extension, UtahAmerican Energy would have had until February 1, 2005, to comply with its development requirements or have its lease terminated. See 30 U.S.C. § 207(a) (providing that “[a]ny lease which is not producing in commercial quantities at the end of ten years shall be terminated”). The 185-day suspension gave UtahAmerican Energy until August 5, 2005, to comply with its development requirement before its lease was terminated. Because BLM did not act to extend that deadline before it passed and because UtahAmerican Energy failed to comply with its development requirements before it passed, I would conclude that UtahAmerican Energy’s lease terminated after it failed to meet the development requirements by August 5, 2005.
II. Standing
Because I would conclude that UtahAmerican Energy no longer holds a valid lease to mine coal, I would not reach the issue of whether SUWA has constitutional standing to raise its claim that OSM must approve a new mining plan for UtahAmerican Energy. Nonetheless, the majority has reached this issue and arrived at a conclusion with which I must respectfully disagree. Unlike the majority of this panel and the district court, whose conclusion on standing we review de novo, see Comm, to Save the Rio Hondo v. Lucero, 102 F.3d 445, 447 (10th Cir.1996), if I needed to reach this issue, I would conclude that SUWA lacks standing under Article III of the Constitution to raise its claim related to the mining plan.
SUWA must satisfy the requirements for associational standing in order to raise this claim on behalf of its members. See Hunt v. Wash. State Apple Adver. Comm’n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); see also Colo. Taxpayers Union, Inc. v. Romer, 963 F.2d 1394, 1397 (10th Cir.1992). To have associational standing, SUWA would need to establish that (1) “its members would otherwise have standing to sue in their own right;” (2) “the interests it seeks to protect are germane to the organization’s purpose;” and (3) “neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.” Colo. Taxpayers Union, Inc., *1247 963 F.2d at 1397-98 (quotation omitted). In this case, the first requirement presents a problem for SUWA.
In order to show that its members would otherwise have standing, SUWA must show that its members could demonstrate the injury, causation, and redressability requirements derived from Article III. SUWA first must show that its members suffered “an injury in fact, defined as the invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.” Stewart v. Kempthorne, 554 F.3d 1245, 1253 (10th Cir.2009) (quotation omitted). Next, SUWA must “demonstrate a causal connection between the injury and the conduct.” Id. (quotation omitted). Finally, SUWA must establish that it is “likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.” SUWA has failed to establish the second requirement.
In order to address whether SUWA has satisfied the causation prong, we must first identify its alleged injury. Here, SUWA asserts OSM had an obligation to prepare a recommendation for the Assistant Secretary regarding UtahAmerican Energy’s proposed mining plan. SUWA claims that OSM failed to comply with that procedural requirement, and, as a result, the Assistant Secretary was unable to make a fully informed decision about UtahAmerican Energy’s proposed mining plan. Thus, SUWA alleges that its members were injured when the Assistant Secretary approved UtahAmerican Energy’s proposed mining plan without the benefit of a recommendation by OSM.
But SUWA cannot establish a causal connection between this alleged injury and the conduct of the defendants because it resulted from the conduct of an independent third party not brought before the court. See City of Colo. Springs v. Climax Molybdenum Co., 587 F.3d 1071, 1080 (10th Cir.2009) (“A plaintiffs injury is fairly traceable to the challenged action ... where there is a causal connection between the injury and the conduct complained of— that is, where the injury is the result of the challenged action of the defendant and not the result of the independent action of some third party not before the court.”) (quotation omitted, emphasis in original). OSM’s failure to prepare a recommendation contributed to the Assistant Secretary’s alleged uninformed decision on UtahAmerican Energy’s proposed mining plan. However, the Assistant Secretary then approved the mining plan, and OSM had no control over that decision. It is this independent action of the Assistant Secretary approving the mining plan without a recommendation from OSM that caused injury to SUWA’s members. Yet, SUWA failed to join the Assistant Secretary as a defendant in this action. Therefore, it has failed to demonstrate that its injury is fairly traceable to the alleged conduct of the defendants because it failed to join the independent actor, the Assistant Secretary, that allegedly caused its members injury. See id.; see also Habecker v. Town of Estes Park, Colo., 518 F.3d 1217, 1225 (10th Cir.2008) (explaining that “where the independent action of some third party not before the court— rather than that of the defendant — was the direct cause of the plaintiffs harm, causation may be lacking”) (quotation omitted).
In sum, then, I do not think we need to reach this issue because I would conclude that UtahAmerican Energy no longer holds a valid mining lease. But, if I were to reach this issue, I would part with my brethren in the majority and conclude that SUWA lacks constitutional standing to bring its claim related to UtahAmerican Energy’s mining plan because it cannot satisfy Article Ill’s causation requirement.
*1248 CONCLUSION
My disagreement with the majority’s resolution of this case prevents me from joining its thoughtful opinion. Accordingly, I respectfully dissent on the grounds articulated above.

. In fact, BLM's March 2007 Amendment Order suggests that BLM operated under a mistake of fact when it issued the original November 2002 Suspension Order. In explaining why it was amending the suspension termination date established in its November 2002 Suspension Order, BLM stated that, "[i]t has come to the attention of this office that there is no court case pending in this matter.” (Jt.App. at 1122 (emphasis added).) That this fact "came to the attention” of BLM suggests that BLM had previously thought a court case was pending.