**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 5, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SMITHSFORK GRAZING
ASSOCIATION, an unincorporated
association on behalf of itself and its
members,

        Plaintiff - Appellant,

v.

KEN SALAZAR, in his official capacity as
Secretary of the United States Department
of the Interior; UNITED STATES
DEPARTMENT OF THE INTERIOR;
MIKE POOL, in his official capacity as
Acting Director of the United States
Bureau of Land Management; UNITED
STATES BUREAU OF LAND
MANAGEMENT, an agency of the United
States Department of the Interior; MARY
JO RUGWELL, in her official capacity as
Field Manager of the Kemmerer Field
Office of the United States Bureau of Land
Management,

        Defendants - Appellees,

-------------------------------

NEW MEXICO CATTLE GROWERS
ASSOCIATION; NEW MEXICO
FEDERAL LANDS COUNCIL,

        Amici Curiae.

No. 08-8005

---

Brandon L. Jensen (Karen Budd-Falen, with him on the briefs), Budd-Falen Law Offices, LLC, Cheyenne, Wyoming, appearing for the Appellant.

Mary Gabrielle Sprague, Attorney, United States Department of Justice, Environmental & Natural Resources Division, Appellate Section, Washington, DC (Ronald J. Tenpas, Assistant Attorney General, United States Department of Justice, Washington, DC; Aaron P. Avila, Attorney, United States Department of Justice, Environmental & Natural Resources Division, Appellate Section, Washington, DC; John R. Green, Acting United States Attorney for the District of Wyoming, Cheyenne, Wyoming; and Carol A. Statkus, Assistant United States Attorney for the District of Wyoming, Cheyenne, Wyoming, with her on the brief), appearing for the Appellees.

Lee E. Peters, Hubert & Hernandez, P.A., Las Cruces, New Mexico, filed a brief for *Amicus Curiae* New Mexico Cattle Growers' Association and New Mexico Federal Lands Council.

Before **TACHA**, **BALDOCK** , and **O'BRIEN**, Circuit Judges.

**TACHA**, Circuit Judge.

Plaintiff-Appellant Smithfork Grazing Association ("Smithsfork") is an association of ranchers who hold federal grazing permits entitling them to run livestock on an allotment in southwestern Wyoming. After the Bureau of Land Management ("BLM") issued decisions modifying the terms and conditions of these permits, Smithsfork petitioned for a stay of the decisions pending an administrative appeal. An administrative law judge denied the stay petition, and

the district court denied Smithsfork's petition for review of agency action. We

have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Smithsfork is a state-chartered association of ranchers who hold grazing

permits issued by the BLM pursuant to the Taylor Grazing Act ("TGA"), 43

U.S.C. § 315 et seq.[1] Each grazing permit allows a rancher ("permittee") to run

sheep, cattle, or both on the Smithsfork Allotment (the "Allotment"), a 90,937-

acre parcel located north and east of Cokeville, Wyoming. Smithsfork's

objectives include providing permittees with consistency in the management of

their livestock and helping permittees achieve a stable working relationship with

the BLM.

For many years, BLM officials have expressed concern about the

Allotment's declining condition. In 1986, the BLM issued a Resource

Management Plan ("RMP") that listed poor livestock distribution and overgrazing

as contributing to the depletion of the Allotment's natural resources. The RMP

---

[1]Congress enacted the TGA in 1934 "to promote the highest use of the public lands," 43 U.S.C. § 315, and "to provide for the orderly use, improvement, and development of the range." *Id.* § 315a. The TGA delegates authority to the Department of the Interior ("DOI") to determine the boundaries of public rangeland and to create grazing districts within those boundaries. *Id.* § 315. For each grazing district, the Secretary of the DOI—acting through the BLM—may "issue or cause to be issued permits to graze livestock . . . to such [individuals] as under his rules and regulations are entitled to participate in the use of the range." *Id.* § 315b.

also identified the Allotment as the BLM's number one priority for improvement out of thirty-nine allotments similarly in decline. In May 2000, a BLM interdisciplinary team completed a rangeland health assessment in which it determined that grazing management practices and overgrazing had continued to diminish Allotment resources in a way that precluded it from meeting specified environmental standards and guidelines. A federal regulation requires that once such a determination is made, the BLM must take appropriate action to meet the standards and guidelines no later than the start of the next grazing year. *See* 43 C.F.R. § 4180.2(c). Accordingly, in August 2001 a BLM field officer issued a Final Decision that shortened the length of the grazing season on the Allotment and that granted each permittee a modified four-year permit with reduced grazing privileges.[2] Each modified permit was eligible for renewal on March 1, 2005. The decision also required the BLM to develop an allotment management plan ("AMP") by the start of the 2005 grazing season.

Three permittees administratively appealed the 2001 decision, and two of the three petitioned the Department of Interior's ("DOI") Interior Board of Land Appeals ("IBLA") to stay the decision pursuant to 43 C.F.R. § 4.21(b). The IBLA consolidated and denied the petitions. The three permittees and the BLM

---

[2]The BLM measures grazing in "animal unit months" ("AUMs"). One AUM is "the amount of forage necessary for the sustenance of one cow or its equivalent for a period of 1 month." 43 C.F.R. § 4100.0-5. The 2001 Final Decision reduced the authorized AUMs by thirty percent over four years.

then agreed to hold their appeals on the merits in abeyance pending completion of the 2005 AMP.

On March 1, 2005, a BLM Field Officer issued the AMP along with a Final Decision renewing all Allotment permits for a ten-year period. In addition to retaining many of the grazing restrictions implemented by the 2001 Final Decision, the 2005 Final Decision added several new restrictive terms and conditions.[3] Smithsfork and its permittees appealed the decision to the DOI's Office of Hearings and Appeals ("OHA") and filed a petition to stay the decision pending their appeal. The OHA denied the stay petition after determining that the appellants had failed to meet their burden of showing both sufficient justification for the stay based on the relative harm to the parties and the likelihood of immediate and irreparable harm absent a stay. *See* 43 C.F.R. § 4.21(b)(1). The appeal remained (and continues to remain) pending with the OHA.

Smithsfork then filed a petition for review of agency action in federal district court to challenge the implementation of the Final Decisions. The district court denied the petition. Smithsfork now appeals, arguing that despite the BLM's broad discretion to regulate livestock grazing on public lands, it has violated the statutory and procedural requirements established by the

---

[3]In February 2006, an administrative law judge determined the three appeals of the 2001 Final Decision were rendered moot by the 2005 Final Decision and dismissed them.

Administrative Procedure Act ("APA"). Specifically, Smithsfork asserts that under the APA, the BLM must afford grazing permittees a hearing on the record before implementing a decision that modifies the terms and conditions of their livestock grazing permits.[4] Smithsfork also contends that both 43 C.F.R. § 4.21 and 43 C.F.R. § 4.471 violate the APA because they place the burden on grazing permittees to justify a stay.

## II. DISCUSSION

"We review de novo a district court's decision regarding an agency action." *Pub. Lands Council v. Babbitt*, 167 F.3d 1287, 1293 (10th Cir. 1999). "A presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action." *Stewart v. Kempthorne*, 554 F.3d 1245, 1251 (10th Cir. 2009) (quotations omitted). We hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," "short of a statutory right," or "without observance of procedure required by law." *See* 5 U.S.C. § 706(2)(A), (C)–(D); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006).

A.     Hearing Requirements Under the APA

_____

[4] Smithsfork does not contest the merits of the grazing decisions, which is an issue still pending before the OHA. Moreover, because the 2005 Final Decision superceded the 2001 Final Decision, we understand Smithfork to challenge only the denial of its petition to stay the 2005 Final Decision.

We first evaluate Smithsfork's argument that under the APA, a decision modifying a grazing permit cannot go into effect until the grazing permittee is afforded a hearing on the record. Smithsfork relies on 5 U.S.C. § 556(d), which provides in relevant part that "a sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." Smithsfork claims that the 2005 Final Decision modifying the terms and conditions of a grazing permit is both a "sanction" and an "order" pursuant to § 556(d) and that the "whole record" cannot be created absent a hearing before an administrative law judge. Smithsfork therefore asserts that under the APA, the modification of a permittee's grazing permit cannot take effect until the permittee receives a hearing on the record.[5]

Section 556 does not apply, however, to every agency "sanction" or "order."[6] Section 556(a) states, in pertinent part, that its procedures apply "to hearings required by section . . . 554," meaning to hearings "required by statute"

_____

[5]Under 43 C.F.R. § 4.21(a), a decision by the BLM becomes effective after the expiration of the time during which a notice of appeal may be filed unless a stay is granted. The regulation thus does not require a hearing before a decision may be implemented. Smithfork relies on the regulation's exception that it applies only "except as otherwise provided by law" to advance its argument founded in 5 U.S.C. § 556(d).

[6]For purposes of this appeal, we need not decide—and therefore do not decide—whether a BLM Field Manager's modification of a grazing permit is a sanction, an order, or both under 5 U.S.C. § 556.

as part of agency adjudications. 5 U.S.C. § 554(a). Smithsfork claims that the relevant hearings "required by statute" are those required by the TGA. The TGA simply directs, however, that the Secretary "shall provide by appropriate rules and regulations for local hearings *on appeals from the decisions of the administrative officer*." 43 U.S.C. § 315h (emphasis added).[7] The TGA does not direct the Secretary to provide a hearing each time the BLM issues a decision modifying the terms and conditions of a grazing permit. Rather, the TGA affords the right only when those decisions are appealed administratively and only in connection with appeals. Nothing in the APA or the TGA expressly precludes those decisions from taking effect before the conclusion of an appeal. Accordingly, it is permissible for the 2005 Final Decision to take effect before a hearing on the record.

Alternatively, Smithsfork argues that the 2005 Final Decision cannot go into effect until the grazing permittee is afforded a hearing on the record because grazing permits are "licenses" under 5 U.S.C. § 558(c), and the APA provides that licenses must be renewed without modification pending an administrative hearing. Smithsfork points our attention to the following portion of § 558:

> When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire

---

[7]The Secretary has accomplished this by issuing regulations 43 C.F.R. § 4160.4 and 43 C.F.R. § 4.472, which provide for a hearing on appeal

-8-

until the application has been finally determined by the agency.

*Id.* § 558(c).

Referencing this provision, Smithsfork asserts that a grazing permit is a license, that permittees are licensees, and that even though the BLM has issued a Final Decision regarding the permittees' applications for renewal of their grazing licenses, that final decision is not a final agency action. We disagree. Even assuming arguendo that grazing permits are licenses and permittees are licensees under § 558(c), we find nothing in § 558(c) or in the legal authorities cited by Smithsfork to persuade us that the 2005 Final Decision is anything other than "the application [being] finally determined by the agency." *Id.* § 558(c). The BLM regulations require that before a Final Decision is issued, a proposed decision shall be served on those permittees affected by proposed modifications to their permits. *See* 43 C.F.R. § 4160.1(a). Thereafter, any permittee or interested member of the public may protest the proposed decision to an authorized officer. *See id.* § 4160.2. Absent a protest, "the proposed decision will become the final decision of the authorized officer without further notice unless otherwise provided in the proposed decision." *Id.* § 4160.3(a). If on the other hand a protest is filed, the field manager shall reconsider the proposed decision before "serv[ing] her/his final decision." *Id*. § 4160.3(b). The fact that the Final Decision may be appealed after it is issued does not, as Smithsfork suggests, undermine its status as an "application . . . finally determined by the agency." *See* 5 U.S.C. § 558(c).

The proposal process—and the term "Final Decision" itself—are sufficient to demonstrate that once a Final Decision is made, the DOI reasonably views the decision as "an application [that] has been finally determined by the agency." *Id.*

Finally, Smithsfork argues that a provision contained in a series of congressional bills enacted from 1979 to 1992 requires an automatic stay of the 2005 Final Decision pending appeal and permanently amends the TGA. *See, e.g.*, H.R. 4930, 96th Cong. (1979) (enacted) ("Upon appeal any proposed reduction [in grazing allotments] in excess of 10 per centum shall be suspended pending final action on the appeal, which shall be completed within 2 years after the appeal is filed"). Smithsfork acknowledges that the bills did not expressly extend this provision beyond 1992 and that no such provisions have appeared in appropriations bills since 1992. However, it contends that amendments to substantive law in an appropriations statute remain in effect until they are suspended, repealed by Congress, or expressly limited by the terms of the statute.

We disagree. Federal law mandates that "an appropriation in a regular, annual appropriation law may be construed to be permanent or available continuously only if the appropriation . . . expressly provides that it is available after the fiscal year covered by the law in which it appears." 31 U.S.C. § 1301. Several federal circuit courts have held, and we now hold, that the same is true of specific provisions in an appropriations bill. *See Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 806 n.19 (9th Cir. 2005) ("'[A]ppropriations acts are

-10-

generally only in force during the fiscal year of the appropriation and do not work a permanent change in the substantive law.'") (quoting *Seattle Audubon Soc'y v. Evans*, 952 F.2d 297, 304 (9th Cir. 1991)); *Atl. Fish Spotters Ass'n v. Evans*, 321 F.3d 220, 224 (1st Cir. 2003) ("A provision in an annual appropriations bill presumptively applies only during the fiscal year to which the bill pertains [unless] . . . the appropriations bill expressly provides that it is available after the fiscal year covered by the law in which it appears.") (quotations omitted); *Bldg. & Constr. Trades Dept., AFL-CIO v. Martin*, 961 F.2d 269, 274 (D.C. Cir. 1992) ("[A] provision contained in an appropriations bill operates only in the applicable fiscal year, unless its language clearly indicates that it is intended to be permanent."). Smithsfork does not argue that the appropriations provisions it references expressly stated that they would be permanent and we find no indication that such is the case. Accordingly, the provisions in those appropriations bills did not apply at the time the BLM issued the 2005 Final Decision.

B.     Burden of Proof

Smithsfork next argues that 43 C.F.R. §§ 4.21(b)(2) and 4.471(d) violate the APA by shifting the burden to permittees to prove the necessity for a stay. Both regulations state, in identical terms, that "[t]he appellant requesting the stay bears the burden of proof to demonstrate that a stay should be granted." 43 C.F.R. §§ 4.21(b)(2), 4.471(d). Citing 5 U.S.C. § 556(d), Smithsfork claims that the APA

-11-

requires the BLM—not permittees—to bear this burden.

Section 556(d) stipulates that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." Smithsfork asserts that the BLM is the obvious proponent of any grazing decision because the APA defines "order" broadly. *See* 5 U.S.C. § 551(6) ("'[O]rder' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing."). But even assuming that the 2005 Final Decision is an order, as we have already stated the procedural requirements of § 556 do not apply to every agency order. As relevant to this case, they apply to hearings associated with the appeal of Final Decisions but not to petitions to stay those decisions. *See id*. §§ 556, 554; 43 U.S.C. § 315h. Accordingly, the APA does not require the BLM to bear the burden of proof under § 556(d) when an appellant requests a stay of a final decision.

Smithsfork also claims that for many years the DOI's administrative decisions have held that shifting the burden of proof from the BLM to grazing permittees violates the APA, and Smithsfork appears to argue that this historical practice should guide our analysis. Smithsfork provides two cases to support its position, but neither is persuasive. First, Smithsfork relies on *Frank Halls*, 62 Interior Dec. 344 (1955), which held that when "the Government issues an order canceling an outstanding grazing permit, and a hearing is held on the propriety of

-12-

that order, the Administrative Procedure Act places the burden of proof upon the Government." *Id.* at 350. However, the issue in the present case is not which party bears the burden of proof in an administrative hearing on appeal, but which party bears that burden in a determination of the propriety of a stay of agency action. *Frank Halls* is therefore inapposite.

Second, Smithsfork relies on *E.L. Cord*, 64 Interior Dec. 232 (1957), which held that "[i]f the appellant had been the holder of a term permit which the range manager had sought to reduce by his decision . . . the burden indeed would have been on the Bureau at the hearing to justify the reduction." *Id.* at 242. Like *Frank Halls*, *E.L. Cord* addresses the issue of which party bears the burden of proof in an administrative hearing conducted after an appeal from a BLM decision. Because the appropriate allocation of the burden of proof in such a hearing is not the issue before us, the holding in *E.L. Cord* is also inapposite.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Smithsfork's petition for review of agency action.