**Mihai MUSET, Plaintiff,**

v.

**Commissioner Stuart J. ISHIMARU and Douglas H. Shulman, Defendants.**

**No. 07–CV–4083 (ENV)(LB).**

United States District Court, E.D. New York.

April 30, 2011.

**364**

George D. Wachtel, Law Office of Ronald L. Kuby, New York, NY, for Plaintiff.

Timothy D. Lynch, United States Attorneys Office, Eastern District of New York, Brooklyn, NY, for Defendants.

### MEMORANDUM & ORDER

VITALIANO, District Judge.

Pro se plaintiff Mihai Muset[1] commenced this action on October 1, 2007, against defendants Stuart J. Ishimaru, Commissioner of the Equal Employment Opportunity Commission ("EEOC") and Douglas H. Shulman[2], Commissioner of the Internal Revenue Service ("IRS").

Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Additionally, plaintiff moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court concludes that plaintiff's claims must be dismissed and plaintiff's motion for sanctions must be denied.

### I. BACKGROUND

The following facts are drawn from the complaint and the submissions of the parties on defendants' motion, including the statements of undisputed material facts filed by all parties pursuant to Local Civil Rule 56.1. The facts are construed, as they must be in the summary judgment context, in the light most favorable to the nonmoving party. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir.2007). Any factual disputes are noted.

Muset is originally from Romania and received asylum in the United States as a political refugee in 1983. (Am. Compl. ¶ 1.) He was employed in 1999 as a senior attorney by the IRS, General Legal Services, Manhattan. (Am. Compl. ¶¶ 3–4.) As a senior attorney, Muset defended IRS management against charges of unfair labor practices and advised management on labor relations matters. (Id. ¶ 7.) Due to

---

1. Typically, when a party is proceeding *pro se,* a court must read that party's supporting papers "liberally ... and interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Nonetheless, though Muset proceeds *pro se,* he is an experienced attorney and the Court is not obligated to read his pleadings with the degree of liberality given to non-attorney *pro se* plaintiffs. *Bliven v. Hunt,* 478 F.Supp.2d. 332, 334 (E.D.N.Y.

2007) (citing *Chira v. Columbia University in New York City,* 289 F.Supp.2d 477, 482 (S.D.N.Y.2003)).

2. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Douglas H. Shulman for Linda Stiff as defendant in this action since Shulman is currently serving as the Commissioner of the Internal Revenue Service.

medical conditions allegedly stemming from his employment, Muset voluntarily stopped working on March 25, 2008, but has since returned to work on a part time basis.

Plaintiff's complaint arises from his representation of the IRS at an EEOC settlement conference on September 25, 2006, after a former IRS employee, Donald Pittman, filed a discrimination complaint ("Pittman complaint") with the EEOC. (*Id.* ¶ 19.) As a senior attorney, Muset generally had the authority to negotiate settlement agreements on behalf of the IRS, after which senior management would actually sign and execute the final agreements. (Muset Decl. ¶ 9(b).)[3] More to the point, Muset claims that he obtained full settlement authority to negotiate the Pittman complaint from Melissa Snell, Deputy National Taxpayer Advocate for the IRS, about one week before the September 25, 2006 settlement conference. (*Id.* ¶ 17(a).) At that conference, plaintiff conducted the negotiation and conveyed a settlement offer to Pittman. (*Id.* ¶ 17(b).) Pittman rejected the offer. (*Id.* ¶¶ 17(g), 17(k).)

The Pittman complaint was assigned for adjudication to Susan Flynn, the Chief EEOC Administrative Judge in the Philadelphia District. On October 5, 2006, Chief Judge Flynn issued an order to show cause ("OSC") grounded in her belief that Muset did not have the settlement authority necessary to conduct the settlement conference. Moreover, Chief Judge Flynn warned that sanctions could be imposed pursuant to 29 C.F.R. § 1614.109(f)(3). (Am. Compl. ¶¶ 37–39.) On or about October 16, 2006, Muset claims that he telephoned Peter Miller, the settlement mediator, at his home to inquire about the factual basis for the OSC

issued by Chief Judge Flynn. (Muset Decl. ¶ 9.) He subsequently responded to the OSC and disputed the evidence submitted against him. (Am. Compl. ¶ 42.) Nevertheless, on January 4, 2007, Chief Judge Flynn issued a sanctions order. The order, though it did not impose any monetary penalties, constituted a finding that Muset had no settlement authority for the Pittman complaint and that he also had engaged in "entirely inappropriate conduct, yelling" at Miller when he called to discuss the OSC. (*Id.* ¶ 44.) By letter dated January 19, 2007, Muset's supervisor, Elliot Carlin, informed Chief Judge Flynn that Muset had in fact been authorized to make the settlement proposal at the Pittman complaint conference, and further requested that she consider withdrawing the sanctions order against Muset. (*Id.* ¶ 48.) Chief Judge Flynn did not respond to Carlin's letter. (*Id.* ¶ 49.)

In January 2007, the IRS initiated an investigation into the facts surrounding the sanctions order. The investigation was conducted by Gary Benford, an attorney for the IRS in Dallas. Benford's report stated that "it [was] difficult to find that [Muset] did not have settlement authority." (*Id.* ¶ 53.) Additionally, he found that, although Muset "exercised poor judgment in telephoning Mediator Miller, without discussing it with his supervisor," he neither "yelled" at Miller nor were his actions "socially inappropriate." (*Id.* ¶ 54.) On February 26, 2007, Chief Counsel, General Legal Services, provided Muset with the results of Benford's investigation. (*Id.* ¶ 52.) Muset then filed a notice of appeal with the EEOC's Office of Federal Operations ("OFC"), and, on July 19, 2007, before Muset could provide a statement and evidence in support of his appeal, the OFC responded, advising Muset that Chief

---

**3.** References to "Muset Decl." denote the declaration of Mihai Muset in support of plaintiff's opposition to defendants' motion for summary judgment.

Judge Flynn's order was "not among the matters that [could] be the subject of an appeal." (Am. Compl. ¶¶ 63, 69.)

After the EEOC denied plaintiff's appeal, he made multiple requests to Carlin and other IRS employees for various documents and records relating to his sanction before filing a formal Freedom of Information Act ("FOIA") request. (Id. ¶¶ 78–181.) Then, on July 28, 2007, Muset did file a formal FOIA request with Sharon King, the Chief Disclosure Officer at the IRS. (Id. ¶ 182.) He sought letters, emails, and records of telephone conversations from January 8, 2007 onward relating to Chief Judge Flynn's sanctions order and his coworkers' subsequent reactions. (Id.) Muset received three responsive letters from the IRS, the last of which was dated December 19, 2007, indicating that more time was needed to process his request, and that the IRS would inform him if they could not fully respond to his request by March 17, 2008. (Id. ¶¶ 186–193.) Muset brought the instant action on October 1, 2007. He filed an amended complaint on January 17, 2008.

In his amended complaint, Muset claims that Chief Judge Flynn "acted maliciously and/or grossly disregarded her obligations under Title VII, the EEOC Regulations, 29 C.F.R. § 1614.101, et. seq., and other EEOC internal guidance manuals, ignored the provisions of the Administrative Procedures Act, and in gross deviation of the U.S. Constitution, failed to afford [him] fundamental due process rights." (Am. Compl. ¶ 73.) He also brings a FOIA claim against the IRS. (Id. ¶ 201.)

On May 14, 2008, the IRS produced 412 pages of documents in response to Muset's FOIA request. It explained that it located a total of 476 pages of documents that were responsive to the request; it released 87 pages in full, 325 pages with information partially redacted, and withheld the remaining 64 pages. (Lynch Decl. ¶¶ 47–48.) [4] The information was withheld, the IRS advised, pursuant to 5 U.S.C. §§ 552(b)(5), (b)(6), and the IRS provided Muset with a "*Vaughn* Index," [5] describing the information withheld and the applicable FOIA exemptions. (Id. ¶ 49.) Muset challenged the sufficiency of the *Vaughn* Index, but, on October, 14 2008, Magistrate Judge Lois Bloom found that the index prepared by the agency was sufficient to determine whether a particular FOIA exemption applied. Judge Bloom also found that the IRS did not withhold large portions of segregable material.

In response to Muset's amended complaint, defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). At the close of discovery, defendants renewed their requests for dismissal and moved for summary judgment pursuant to Rule 56.

## II. *STANDARD OF REVIEW*

### A. Rule 12 Standard

■ When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), "as well as on other grounds, the court should consider the Rule 12(b)(1)

---

4. References to "Lynch Decl." denote the declaration of Timothy D. Lynch in support of defendants' motion for summary judgment.

5. The term "Vaughn Index" was derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). It "usually consists of a detailed affidavit, the purpose of which is to permit the court system effectively and efficiently to evaluate the factual nature of disputed information." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149, n. 2, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989) (internal quotations omitted).

challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guaranty Assoc.*, 896 F.2d 674, 678 (2d Cir.1990) (internal quotations and citation omitted). A case is properly dismissed under Rule 12(b)(1) where a court "lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir.2002).

### B. Summary Judgment Standard

In assessing the merits of a summary judgment motion, a court's duty is not to try issues of fact, but rather to "determine whether there are issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 15–16 (2d Cir.1995). The moving party bears the burden of showing that there is no genuine issue as to any material fact, *see, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.2005), and the court will resolve all ambiguities and draw all permissible factual inferences in favor of the nonmoving party, *see, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line. Inc.*, 391 F.3d 77, 83 (2d Cir.2004).

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. *See George v. Reisdorf Bros., Inc.*, 410 Fed.Appx. 382, 383–84 (2d Cir.2011). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### III. DISCUSSION

### A. Review of Sanctions Imposed by an Administrative Judge

■ As a foundational matter, defendants contend that the Court lacks subject matter jurisdiction under the Administrative Procedure Act ("APA"). It is well-established that "[t]he APA is not an independent grant of subject matter jurisdiction." *Lunney v. U.S.*, 319 F.3d 550, 557 (2d Cir.2003) (citing *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 457–58, 119 S.Ct. 930, 935, 142 L.Ed.2d 919 (1999)). It "does not confer jurisdiction on a district court to review the decision of an administrative agency." *Kim v. Ashcroft*, 340 F.Supp.2d 384, 388 (S.D.N.Y.2004) (quoting *Zheng v. Reno*, 166 F.Supp.2d 875, 878 (S.D.N.Y.2001)). "Rather, it waives the federal government's sovereign immunity in actions brought under the general federal question jurisdictional statute, 28 U.S.C. § 1331." *Lunney*, 319 F.3d at 558. Consequently, "where a plaintiff alleges that [a] defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to section 1331." *Kim*, 340 F.Supp.2d at 388.

In his amended complaint, Muset failed to allege that the EEOC or Chief Judge Flynn violated any specific federal statute or regulation in issuing a sanction against him, which is essential to an invocation of the Court's subject matter jurisdiction under § 1331. However, in his opposition to the instant motion, Muset submits that

Chief Judge Flynn violated 5 U.S.C. § 556(d), which provides that a "sanction may not be imposed ... except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." Defendants, on the other hand, contend that Chief Judge Flynn's decision was "committed to agency discretion," and therefore not properly before the Court.

■■■ Under § 701(a)(2) of the APA, "agency action is not subject to judicial review to the extent that such action is committed to agency discretion by law." *Lunney,* 319 F.3d at 558 (quoting *Lincoln v. Vigil,* 508 U.S. 182, 190–91, 113 S.Ct. 2024, 2030, 124 L.Ed.2d 101 (1993)). Stated differently, "there is no jurisdiction if the statute or regulation said to govern the challenged agency action 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985)). Defendants argue that the APA itself, "including its arbitrary and capricious standard, is not a sufficient basis for a 'meaningful standard' of review," (Memorandum of Law in Support of Defendants' Motion to Dismiss and for Summary Judgment, at 9) (quoting *Lunney,* 319 F.3d at 559 n. 5.), and that EEOC regulations, 29 C.F.R. § 1614.109(e) et seq., "leave the determination as to whether or not to discipline or sanction an agency attorney for conduct deemed inappropriate to the judgment of an administrative judge," (*id.* at 9–10.) They submit that Chief Judge Flynn's decision to issue a sanction involved " 'a complicated balancing of a number of factors ... peculiarly within [her] expertise,' " (*id.* at 10) (quoting *Heckler,* 470 U.S. at 831, 105 S.Ct. 1649), and that courts "have consistently declined to review" such deci-

sions, (*id.*) (citing *Heckler,* 470 U.S. at 831–32, 105 S.Ct. 1649; *Vigil,* 508 U.S. at 192–93, 113 S.Ct. 2024). Nonetheless, the Court must be mindful that this "committed to agency discretion" exception is "a very narrow exception" that is applicable only in "rare instances." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820–21, 28 L.Ed.2d 136 (1971). Here, Muset does not invoke the "arbitrary and capricious" standard as the basis for jurisdiction, but instead argues that 5 U.S.C. § 556(d) provides the "meaningful standard" under which the Court must evaluate the agency action. (Plaintiff's Memorandum of Law Opposing Defendants' Motion to Dismiss and for Summary Judgment, at 10). Though he does not carry the day, at least as to the first pitched battle, plaintiff succeeds on defendants' 12(b)(1) motion. The Court will follow the "presumption favoring judicial review of administrative action," *Kucana v. Holder,* —— U.S. ——, 130 S.Ct. 827, 839, 175 L.Ed.2d 694 (2010), and not close the courthouse doors to Muset on his APA claim.

■■ That being said, moving to the merits of the APA claim, the tide turns. To begin, § 556(d) of the APA states:

A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence.... A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts.

But, this section does not appear to impair an administrative judge's ability to reprimand an attorney for conduct during a hearing or other adjudicatory-related

proceeding. Pointedly, § 556 does not apply "to every agency 'sanction' or 'order.'" *Smithsfork Grazing Ass'n v. Salazar,* 564 F.3d 1210, 1214 (10th Cir.2009) (citing 5 U.S.C. § 556(d)). Instead, § 556(a) "states, in pertinent part, that its procedures apply 'to hearings required by section ... 554,' meaning to hearings 'required by statute' as part of agency adjudications." *Id.* (citing 5 U.S.C. § 556(a)). Critically, Muset can point to no statute or EEOC regulation that requires a hearing as a pre-requisite to an administrative judge imposing a reprimand for attorney misconduct during the processing of an EEOC complaint. Absent a statutory right to a hearing, § 556(d) is inapplicable by its terms.

Muset's reliance on § 556(d) seems to be based solely on the prefatory clause "[a] *sanction* may not be imposed...." But the mere reference to "sanction" does not make § 556(d) applicable to every "sanction" that can conceivably be imposed in connection with an administrative proceeding. Rather, the term "sanction" refers to penalties or adverse determinations flowing from consideration of the *subject matter* of the complaint itself. For example, in this context, if the EEOC administrative judge decided to "sanction" the employer for discriminatory conduct relating to the complainant's employment, and there was a statutory right to a hearing in connection with complaint resolution, § 556(d) would be applicable. The section does not apply when an administrative judge exercises her discretionary authority to penalize, censure or admonish an attorney for inappropriate conduct during those substantive proceedings. Simply put, § 556(d) is not a lawyer decorum rule providing, for example, the administrative equivalent to Federal Rule of Civil Procedure 11, controlling the imposition of attorney "sanctions."

In fact, no court has ever applied § 556(d) to reprimands or sanctions issued by an administrative judge for attorney misconduct during an agency proceeding. Historically, the provision has only been applied to the *substantive* agency determination itself. *See, e.g., Steadman v. S.E.C.,* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) (applying § 556 to sanctions imposed against a party charged with violations of federal securities laws in SEC disciplinary proceeding); *United States v. Florida E.C.R. Co.,* 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973) (applying § 556 to Interstate Commerce Commission rulemaking proceeding); *Skukan v. Consolidation Coal Co.,* 993 F.2d 1228 (6th Cir.1993) (applying § 556 to administrative judge decision regarding an application for black lung disability benefits); *Maher Terminals v. Director, Office of Workers Compensation Programs,* 992 F.2d 1277 (3d Cir.1993) (applying § 556 to administrative judge decision in a proceeding under the Longshore and Harbor Workers' Compensation Act for disability benefits). If any of these sanctioned a party for the frivolous filing of a claim or defense, as opposed to, e.g., a sanction for violations of federal securities laws, that would be the equivalent of Rule 11.

More pertinently, EEOC regulations are hardly silent on perceived attorney misconduct. And, far from requiring a hearing or establishing detailed procedures governing how sanctions should be imposed for attorney misconduct, EEOC regulations, instead, give administrative judges broad discretion. In fact, the applicable regulation clearly states that the only time an administrative judge is required to provide notice and an opportunity to be heard regarding attorney misconduct, is if the judge is ordering suspension or disqualification of the attorney as a result of such conduct. Pursuant to 29 C.F.R. § 1614.109(e):

The administrative judge shall have the power to regulate the conduct of a hearing . . . and exclude any person from the hearing for contumacious conduct or behavior that obstructs the hearing. . . . The administrative judge or the Commission may refer to the Disciplinary Committee of the appropriate Bar Association any attorney or, upon reasonable notice and an opportunity to be heard, suspend or disqualify from representing complainants or agencies in EEOC hearings any representative who refuses to follow the orders of an administrative judge, or who otherwise engages in improper conduct.

The sanctions order issued by Chief Judge Flynn in this case merely states that:

Agency counsel is reprimanded for his behavior and admonished not to repeat such conduct in the future. Any future violation of an Order issued by this office to appear at a Settlement Conference or Mediation shall result in sanctions, ranging from suspension of Agency counsel's right to represent the Agency before this office for some period of time to entry of default judgment.

And even so, Chief Judge Flynn still provided Muset with notice and an opportunity to be heard in this instance. Under EEOC regulations, the administrative judge was acting well within her discretion in issuing this sort of reprimand.

Since no hearing was required by statute (or even regulation), § 556(d) simply does not apply to the "sanctions" order issued by Chief Judge Flynn, and, Muset's APA claim must be dismissed.

**B. Due Process**

■ Muset next asserts a general due process claim. His amended complaint states that "[i]n issuing the SO . . . in gross deviation of the U.S. Constitution, [Chief Judge Flynn] failed to afford [him] fundamental due process rights." (Am. Compl. ¶ 73.) This presumably is based on the fact that he did not receive a hearing prior to being sanctioned (or after, for that matter), which implicates his procedural due process rights under the Fifth Amendment. Of course, it is "well-established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary," *Wong v. Warden, FCI Raybrook*, 171 F.3d 148, 149 (2d Cir.1999), and so defendants' 12(b)(1) motion regarding this claim is also denied. The Court clearly has the authority to hear Muset's due process claim.

■ Procedural due process "imposes constraints on governmental proceedings which result in decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Indeed, the "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Id.* (quoting *Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). In *Mathews*, the Court held that when a "liberty" or "property" interest is at stake, courts should consider three "distinct factors" to determine what type of process someone is due before they are deprived of their "liberty" or "property." *Id.* at 335, 96 S.Ct. 893. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and fi-

nally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Muset's due process claim is based on the reputational harm he suffered as a result of Chief Judge Flynn's reprimand. But, although obviously chafing to Muset, this is not the type of "liberty" or "property" interest that implicates *Mathews.* Indeed, it is well-established that "reputation alone, apart from some more tangible interests such as employment," does not implicate any "liberty" or "property" interests "sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976). Incontestably, that is all that is in issue. Chief Judge Flynn's sanction did not involve a monetary fine or hinder Muset from practicing law in any tangible way, either before the EEOC or anywhere else.

▆▆▆ Furthermore, procedural due process "requires [only] that courts provide notice and an opportunity to be heard before imposing any kind of sanctions." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.,* 174 F.3d 87, 92 (2d Cir.1999). Before sanctions can be imposed, an attorney "must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard...." *Id.* Nothing in the record suggests that the leveling of Muset's reprimand did not meet this standard, even assuming it qualifies as a "sanction." Prior to issuing the sanctions order, Chief Judge Flynn issued an order to show cause that adequately identified the sanctionable conduct and permitted Muset and

his agency to respond. The IRS, in turn, did in fact respond and the final sanctions order referenced the response received. That no formal hearing was held is irrelevant. An "opportunity to be heard" does not necessarily entail a formal hearing or the ability to cross-examine witnesses. A court contemplating sanctions "need only ensure that an attorney who is potentially subject to a sanctions order has an opportunity to respond in writing to the allegations." *Storli v. Holliday,* 37 Fed.Appx. 874, 876 (9th Cir.2002); *cf. Levey v. Kesser Cleaners Corp.,* No. 06–CV–02530, 2007 WL 2177048, at *2, 2007 U.S. Dist. LEXIS 54738, at *5 (E.D.N.Y. July 27, 2007) (attorney had sufficient notice and opportunity to be heard even when the order to show cause did not specifically identify the conduct later found to be sanctionable). Consequently, the Court finds that Muset was provided with ample, and, certainly, adequate procedural due process protection pursuant to the Fifth Amendment. As a result, this claim is dismissed on defendants' Rule 56 motion.[6]

### C. Title VII

▆▆ Muset next seeks remedy in a Title VII claim, alleging that in "issuing the SO ... [Chief Judge Flynn] acted maliciously and/or grossly disregarded her obligations under Title VII." (Am. Compl. ¶ 73.) Title VII makes it unlawful for an "*employer* to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). It is undisputed that Muset never had an em-

---

6. Given the summary disposition on Muset's due process claim, it is hard to imagine that, had he had a statutory basis for an APA claim arising from these same circumstances, that such a challenge would survive motion on an even more deferential APA review.

ployer-employee relationship with the EEOC. Title VII simply does not authorize actions against the EEOC for sanctions imposed upon attorneys who appear before its administrative judges. *See Szeredy v. Potter,* No. 06–CV–7589, 2008 WL 5155666, at *2, 2008 U.S. Dist. LEXIS 99626, at *5 (S.D.N.Y. Dec. 4, 2008) ("Title VII provides no cause of action for a non-employee of the EEOC based on conduct by the EEOC"). It matters not that Muset was employed by another separate and distinct agency which also acts in the name of the United States. As such, summary judgment is warranted.

## D. FOIA

■ Muset also brings a FOIA claim against the IRS. FOIA permits any person to request records from a government agency, so long as they reasonably describe the record(s) sought and comply with other terms of the statute. *See* 5 U.S.C. § 552(a)(3). There is no dispute that Muset made a formal FOIA request to the IRS on July 28, 2007, and, after some delay, the IRS produced 412 pages of documents on May 14, 2008. (Lynch Decl. ¶ 51.) Despite the delay, the documents that were the subject of the FOIA request were produced by the IRS, albeit after this action was filed. Therefore, Muset's claim for relief under FOIA became moot when he received the requested documents. *See Fisher v. F.B.I.,* 94 F.Supp.2d 213, 216 (D.Conn.2000) (citing *DeBold v. Stimson,* 735 F.2d 1037, 1040 (7th Cir.1984)).

■ To the extent Muset wishes to challenge the 64 documents withheld by the IRS or the documents that were partially redacted, such claims are not properly before the Court. During discovery, Judge Bloom found that Muset had received an adequate *Vaughn* index detailing the FOIA exemptions under which the IRS withheld certain documents. No ap-

peal of Judge Bloom's order was taken. Subsequently, as a matter of FOIA process, to challenge those claimed exemptions, Muset was required first to appeal directly to the IRS before seeking federal judicial relief. *See* 5 U.S.C. §§ 552(a)(6)(A)(i),(ii); *see also Ruotolo v. Dept. of Justice, Tax Div.,* 53 F.3d 4, 8 (2d Cir.1995) (the denial of requested information must first be appealed to the head of an agency). It is manifest that the failure to exhaust the administrative remedies provided by FOIA divests a federal district court of subject matter jurisdiction over any claim regarding that request for judicial relief. *Thomas v. Office of the U.S. Att'y,* 171 F.R.D. 53, 55 (E.D.N.Y.1997); *see also Sloman v. United States Dep't of Justice,* 832 F.Supp. 63, 66–67 (S.D.N.Y. 1993) ("Requiring litigants to exhaust their administrative remedies insures that there is no premature interruption of the administrative process and that the administrative agency involved has an opportunity to correct its own errors."). Muset's FOIA claim, therefore, as to the documents actually received is dismissed as moot, and, as to the documents redacted or withheld entirely, is dismissed for want of subject matter jurisdiction.

## E. Rule 11 Sanctions

■ Finally, the Court addresses Muset's motion for sanctions against defense counsel pursuant to Federal Rule of Civil Procedure 11(c). He contends that in a November 10, 2008 pre-motion conference letter, defense counsel made factual contentions that proved to be "false, misleading and/or unsupported," in violation of Rule 11(b). (Plaintiff's Motion for Sanctions, at 1.) Muset specifically identifies three statements made by defendants:

(1) On September 25, 2006, Plaintiff appeared at the settlement conference and it was not apparent to the Set-

tlement Official that he had the requisite settlement authority.

(2) The Settlement Official reported that fact to [Chief Judge Flynn].

(3) [Chief Judge Flynn] also found that Plaintiff had compounded the problem by calling the Settlement Official after the OTSC had been issued and yelling at the official.

(*Id.* at 2.)

 The decision to impose Rule 11 sanctions is "not based on the subjective beliefs of the person making the [challenged] statement." *Storey v. Cello,* 347 F.3d 370, 387 (2d Cir.2003). Rather, it is based on a standard of "objective unreasonableness." *Margo v. Weiss,* 213 F.3d 55, 65 (2d Cir.2000). The determination, of course, is committed to the district court's sound discretion. *Storey,* 347 F.3d at 387. Unquestionably, sanctions "are to be reserved for extreme cases of misconduct." *Schweizer v. Mulvehill,* 93 F.Supp.2d 376, 413 (S.D.N.Y.2000). If a court determines that Rule 11(b) has been violated, it may impose sanctions to deter repetition of such conduct. Fed.R.Civ.P. 11(c)(2).

The three statements identified by Muset are not "objectively unreasonable" and do not warrant Rule 11 sanctions. Regarding the first, Muset submits no conclusive evidence that it had to be apparent to Miller at the time that Muset did have the requisite type of settlement authority. (Indeed, Muset was not the final authority.) As to the second statement, it is reasonable to assume that it could have been Miller that reported the lack of settlement authority to Chief Judge Flynn, as he was the only settlement official present at the September 25, 2006 conference. And, lastly, regarding the third, Chief Judge Flynn did find that Muset compounded the problem by calling Miller and "yelling" at him after he received the order to show cause, and stated this explicitly in her sanctions order. Rule 11 does not require that attorneys state facts only after conducting some mini-trial to assure accuracy; all that is required is that they make a "reasonable inquiry" into the facts before setting forth their conclusions. *See, e.g., Eastway Const. Corp. v. City of New York,* 637 F.Supp. 558, 567 (E.D.N.Y.1986). In short, Muset's complaint about his adversaries' conduct is without substantial basis. The motion for sanctions under Rule 11 is denied.

## IV. *CONCLUSION*

For all the reasons discussed above, plaintiff's APA and his FOIA claim, to the extent it is not moot, are dismissed pursuant to Rule 12. As to Muset's due process and Title VII claims, defendants are awarded summary judgment pursuant to Rule 56. Plaintiff's motion for sanctions under Rule 11 is denied.

The Clerk of the Court is directed to enter judgment for defendants and to close this case.

**SO ORDERED.**